1  GENE J. STONEBARGER (Cal. State Bar No. 209461)
2  gstonebarger@stonebargerlaw.com
   STONEBARGER LAW, APC
3  101 Parkshore Drive, Suite 100
   Folsom, CA 95630
4  Telephone: (916) 235-7140

5  MICHAEL E. VINDING (Cal. State Bar No. 178359)
6  mvinding@bradyvinding.com
   BRADY & VINDING
7  400 Capitol Mall, Suite 2640
   Sacramento, CA 95814
8  Telephone: (916) 446-3400

9  Attorneys for Plaintiffs and the Class

10

11             **UNITED STATES DISTRICT COURT**

12            **CENTRAL DISTRICT OF CALIFORNIA**

13                **SANTA ANA DIVISION**

14

15  EDGAR GARCIA, an individual; and          ) CASE NO.: 8:22-CV-0699
    DEAN WEBB, an individual; on behalf       )
16  of themselves and all others similarly    ) Assigned to Hon. Cormac J. Carney
    situated,                                 )
17                                            )
              Plaintiffs,                     )
18                                            ) **CLASS ACTION**
    vs.                                       )
19                                            )
    PELICAN INVESTMENT HOLDINGS               ) **FIRST AMENDED CLASS**
20  GROUP, LLC, a Delaware Limited            ) **ACTION COMPLAINT FOR:**
    Liability Company, d/b/a AAP and          )
21  AUTO SERVICE DEPARTMENT; GUS              ) **1) VIOLATIONS OF THE**
    RENNY, an individual and Corporate        ) **TELEPHONE CONSUMER**
22  Agent; DEALER LOYALTY                     ) **PROTECTION ACT, 47 U.S.C. §**
    PROTECTION, INC., a Wyoming               ) **227; AND**
23  Corporation; RICHARD BENEVENTO,           )
    an individual and Corporate Agent,        ) **2) VIOLATIONS OF**
24  AUTO KNIGHT MOTOR CLUB, INC.,             ) **CALIFORNIA'S CONSUMER**
    a California Corporation; THE             ) **LEGAL REMEDIES ACT, CAL**
25  FORTEGRA GROUP, LLC, a Delaware           ) **CIV. CODE § 1770(a)(22)(A)**
    Limited Liability Company; TIPTREE        )
26  INC., a Maryland Corporation; and SING    ) **DEMAND FOR JURY TRIAL**
    For Service, LLC d/b/a MEPCO, an          )
27  Illinois Limited Liability Company; and   )
    DOES 1 through 50, inclusive             )
28                                            )
              Defendants.                     )

STONEBARGER LAW
A Professional Corporation

1    Plaintiffs EDGAR GARCIA and DEAN WEBB ("Plaintiffs"), on behalf of

2  themselves and all others similarly situated, complain and allege of Defendants

3  PELICAN INVESTMENT HOLDINGS GROUP, LLC, a Delaware Limited

4  Liability Company, d/b/a AAP and AUTO SERVICE DEPARTMENT,  ("Pelican"

5  or "AAP"); GUS RENNY, an individual and Corporate Agent of AAP

6  ("RENNY"); DEALER LOYALTY PROTECTION, INC., a Wyoming

7  Corporation ("DLP"); RICHARD BENEVENTO, an individual and Corporate

8  Agent of DLP; AUTO KNIGHT MOTOR CLUB, INC., a California Corporation

9  ("AUTO KNIGHT"); THE FORTEGRA GROUP, LLC, a Delaware Limited

10  Liability Company ("FORTEGRA"); TIPTREE INC., a Maryland Corporation

11  ("TIPTREE"); and SING FOR SERVICE, LLC d/b/a MEPCO a Delaware Limited

12  Liability Company ("MEPCO"); and DOES 1-50 (collectively "Defendants") as

13  follows:

**I.**

**INTRODUCTION**

16    1.    This action is brought on behalf of all consumers who have received

17  unsolicited and un-consented to automated prerecorded telephone calls on their

18  cellular telephones and landline telephones from Defendants, in violation of the

19  Federal Telephone Consumer Protection Act and California's Consumer Legal

20  Remedies Act.

**II.**

**JURISDICTION & VENUE**

23    2.    Defendants, and each of them, are business entities who conduct

24  substantial business in California, including the County of Orange, who have

25  caused both the respective obligations and liabilities of Defendants to arise in the

26  County of Orange. Further, Plaintiffs are citizens of the County of Orange. AUTO

27  KNIGHT, a key figure in the common scheme, is a California corporation.

28  RICHARD BENEVENTO, the Corporate Agent for DLP, is licensed by the

STONEBARGER LAW
A Professional Corporation

FIRST AMENDED CLASS ACTION COMPLAINT

California Department of Insurance as a California Resident Insurance Producer "Motor Club Agent." All Defendants not only availed and continue to avail themselves to California's Jurisdiction, they aggressively invaded the lives and peaceful tranquility of thousands of California Consumers in doing so.

3.     The amount in controversy exceeds the jurisdictional minimum of this Court.

4.     Defendant Dealer Loyalty Protection, Inc., removed this Class Action from Orange County Superior Court to this District Court on March 21, 2022 pursuant to 28 U.S.C. §§ 1331 and 1441, initiating the case in this Venue. Venue is also proper in this jurisdiction for TCPA claims pursuant to 47 U.S.C. §§ 227 (b)(3)(A-C).

### III.
### THE PARTIES

**A.     Plaintiffs**

5.     Plaintiff Edgar Garcia ("Plaintiff Garcia") is a resident of the County of Orange, in the State of California, who, during the relevant Class Period, received unsolicited and un-consented to automated prerecorded telephone calls on his cellular telephone (714-650-3831) from Defendants, and was solicited to pay money, and did pay money, to Defendants. Plaintiff Garcia's wireless telephone number is included on the National Do Not Call Registry.

6.     Plaintiff Dean Webb ("Plaintiff Webb") is a resident of the County of Orange, in the State of California, who, during the relevant Class Period, received unsolicited and un-consented to autodialed and/or prerecorded telephone calls on his cellular telephone (909-253-8943) from Defendants, and was solicited to pay money, and did pay money, to Defendants.

**B.     Defendants**

7.     Defendant Pelican is a Delaware Limited Liability Company, with its principal place of business, head office, or otherwise valid mailing address at 1300

STONEBARGER LAW
A Professional Corporation

Old Congress Rd, West Palm Beach, FL 33409. Pelican is the registered owner of the Fictitious Name AAP, holds itself out to the public as AAP and therefore may be referred to as "AAP." Pelican also does business as "AUTO SERVICE DEPARTMENT."

8.      Defendant RENNY is an individual, and Corporate Agent of AAP. RENNY is a resident of Palm Beach County, Florida.  RENNY, was the Corporate Agent on behalf of AAP who assisted in orchestrating the common scheme by all Defendants to willfully and knowingly engage in the illegal conduct as set forth herein.

9.      Defendant DLP is a Wyoming Corporation, with its principal place of business at 319 Route 17, North Mahawah, NJ 07430, and with an administrative office, or otherwise valid mailing address at 10151 Deerwood Park Blvd., Suite 500, Jacksonville, FL 32256. Plaintiffs are informed and believe that DLP has filed articles of incorporation in approximately 29 different states.

10.     Defendant BENEVENTO is an individual, and Corporate Agent of DLP. Plaintiffs are informed and believe that BENEVENTO is a primary resident of New Jersey; and obtained licensing as a California "Resident Insurance Producer" from the California Department of Insurance using a Morgan Hill, California address where he did not reside. RICHARD BENEVENTO is licensed by the California Department of Insurance as a California Resident Insurance Producer "Motor Club Agent." Plaintiffs are informed and believe that BENEVENTO does not possess any other licensing from the California Department of Insurance. BENEVENTO, was the Corporate Agent on behalf of DLP who assisted in orchestrating the common scheme by all Defendants to willfully and knowingly engage in the illegal conduct as set forth herein.

11.     Defendant AUTO KNIGHT is a California Corporation, with its principal place of business, head office, or otherwise valid mailing address at 10151 Deerwood Park Blvd., Suite 200, Jacksonville, FL 32256.

STONEBARGER LAW
A Professional Corporation

12.    Defendant FORTEGRA is a Delaware Limited Liability Company, with its principal place of business, head office, or otherwise valid mailing address at 10151 Deerwood Park Blvd., Suite 200, Jacksonville, FL 32256.

13.    Defendant TIPTREE is a Maryland Corporation, with its principal place of business, head office, or otherwise valid mailing address at 299 Park Avenue, 13th Floor, New York, NY 10171.

14.    Defendant MEPCO is a Delaware Limited Liability Company with its principal place of business, head office, or otherwise valid mailing address at 205 N. Michigan Avenue, Suite 2200, Chicago, IL 60601.

15.    Plaintiffs are unaware of the true names, capacities, or basis for liability of Defendants Does 1 through 50, inclusive, and therefore sues said Defendants by their fictitious names.  Plaintiffs will amend their complaint to allege their true names, capacities, or basis for liability when the same have been ascertained.  Plaintiffs are informed and believes, and on that basis alleges, that Defendants DOES 1 through 50, inclusive, and each of them, are in some manner liable to Plaintiffs, and/or are proper and necessary parties to this action in light of the relief requested.

**C.     Agency and Aiding and Abetting Relationship of Defendants**

16.    Plaintiffs are informed and believe, and based thereon allege, that all Defendants, including the fictitious DOE Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners, joint ventures, direct contractors and/or employees of all other Defendants, acting in contract and concert, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permissions, knowledge, consent, authorization and ratification of their Co-Defendants.

17.    Defendants are liable for each others' acts based on ordinary vicarious liability principals. Defendants DLP and FORTEGRA conspired to create the

FIRST AMENDED CLASS ACTION COMPLAINT

common scheme of selling Vehicle Service Contracts ("VSC") across the country, including in California, whereby FORTEGRA acquired AUTO KNIGHT to act as a co-administrator for the VSC scheme in conjunction with DLP.

18.     DLP, by and through and/or at the direction of BENEVENTO, conspired with AAP, by and through and/or at the direction of RENNY, to engage in an aggressive automated prerecorded telephone calling campaign whereby Defendants would blanket the country, including California residents, with unsolicited VSC sales calls, including calls to people on the National Do Not Call Registry. AAP acted as an Agent for all Defendants in carrying out the illegal telephone calling campaign.

19.     AAP, DLP, AUTO KNIGHT and FORTEGRA conspired with MEPCO for MEPCO to act as an Agent to process payments to finance the consumers' VSC policy monthly insurance premium payments. MEPCO did in fact process the payments from consumers who fell victim to this common scheme through the illegal telephone calling campaign, including payments from Plaintiffs and the Class.  MEPCO, and all Defendants, had full knowledge of the calling campaign, ratified it, and profited from it.

20.     Plaintiffs are informed and believe, and on that basis alleges, that Defendants TIPTREE, FORTEGRA and AUTO KNIGHT are alter egos of each other.  Plaintiffs are informed, believe, and on that basis alleges, that there is common scheme and control over Defendants, TIPTREE, FORTEGRA and AUTO KNIGHT, and they operate pursuant to a common business plan.  There is unity of interest among Defendants.  TIPTREE, FORTEGRA and AUTO KNIGHT are affiliates of each other and are under common ownership. TIPTREE owns FORTEGRA, and FORTEGRA owns AUTO KNIGHT. The alternative alter-ego relationship among these Defendants should be recognized to prevent an injustice. If the agency and/or alter-ego relationship among these Defendants is not recognized, an inequity will result because an entity responsible for wrongdoing

STONEBARGER LAW
A Professional Corporation

will be shielded from liability. Moreover, the Co-Defendant entities that make, in whole or in part, the decisions concerning the wrongdoing alleged herein would escape liability, which is inequitable.  Furthermore, the alter-ego relationship should be recognized to ensure effective injunctive relief, so that the wrongful practices alleged herein are not relocated to an affiliated company.

**IV.**

**GENERAL ALLEGATIONS**

**A.**   **Governing Law**

21.    In 1991, Congress enacted the Telephone Consumer Protection Act, "TCPA," 47 U.S.C. section 227 in response to a growing number of consumer complaints regarding telemarketing practices. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

22.    The TCPA regulates, among other items, the use of automated telephone equipment, also known as "autodialers." The language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the dialed party. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."

23.    In an action under the TCPA, a plaintiff must only show that the defendant called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice. These telephone calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. Further, such calls can be costly and inconvenient.

STONEBARGER LAW
A Professional Corporation

24.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. On or about January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed or prerecorded message telephone calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the telephone calls are made with the "prior express consent" of the called party. In 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines.  The FCC posts on its website a Consumer Guide warning consumers to "Watch out for Auto Warranty Scams" (https://www.fcc.gov/consumers/guides/beware-auto-warranty-scams) stating:

> If you own a vehicle and a phone, you may receive calls from scammers posing as representatives of a car dealer, manufacturer or insurer telling you that your auto warranty or insurance is about to expire. The call will include some sort of pitch for renewing your warranty or policy.
>
> During the call – which often begins automated or pre-recorded – you may be instructed to press a certain number or stay on the line, then asked to provide personal information, which potentially can be used to defraud you.
>
> What makes it particularly hard to discern if this type of call is fraudulent is that the scammer may have specific information about your particular car and warranty that they use to deceive you into thinking they are a legitimate caller.

25.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or prerecorded voice …." 47 U.S.C. §§ 227 (b)(1)(A)(iii).

26.     Defendants knowingly and willfully violated the automated-call requirements and the prohibition on prerecorded voice requirements under 47 U.S.C. §§ 227 (b); and willfully and knowingly violated the do-not-call-list

STONEBARGER LAW
A Professional Corporation

1   requirements under 47 U.S.C. § 227(c)(3).

2       27.    Defendants also knowingly and willfully violated California Civil

3   Code § 1770(a)(22)(A) which prohibits "disseminating an unsolicited prerecorded

4   message by telephone without an unrecorded, natural voice first informing the

5   person answering the telephone of the name of the caller or the organization being

6   represented, and either the address or the telephone number of the caller, and

7   without obtaining the consent of that person to listen to the prerecorded message."

8       **B.    Factual Allegations**

9       28.    During the relevant limitations period, Defendants placed one or more

10  telephone calls to Plaintiffs' and the Class Members' cellular telephones, which

11  telephone calls included a prerecorded voice for the purposes of furthering the sale

12  of Vehicle Service Contracts (a/k/a Automobile Extended Warranties) constituting

13  telemarketing. Plaintiffs allege on information and belief that the calls to Plaintiffs'

14  cellular telephone were initiated by Defendants using an automatic telephone

15  dialing system.

16      29.    Defendants did not obtain Plaintiffs' prior express written consent

17  before initiating the calls to Plaintiffs' cellular telephone. Plaintiffs are informed

18  and believe that as part of Defendants' scheme consent forms were retroactively

19  populated through a website utilized by AAP called "policy-hub.com" to create the

20  appearance of prior consent despite the lack of such prior consent.  At no time after

21  the creation of the contractual event did Plaintiffs or the Class knowingly give

22  retroactive consent.

23      30.    Defendants contract with call centers as agents to sell the VSCs

24  through illegal telephone solicitations and aggressive sales tactics, insisting that the

25  consumer must make a decision before they get off the phone call or they will lose

26  the opportunity. Defendants then mandate an initial monetary payment from the

27  consumer over the phone prior to sending any written detail regarding the VSCs.

28  / / /

STONEBARGER LAW
A Professional Corporation

31.    Plaintiffs are informed and believe, and based thereon allege, that the telephone solicitation calls begin with a pre-recorded voice telling the consumer to "Press 1" regarding extending his/her car's warranty. Upon pressing "1" the consumer is transferred to a live operator (at an international call center) to confirm the year, make and model of the consumer's vehicle, and to inform the consumer that he/she is eligible for an extended warranty on his/her vehicle.

32.    Plaintiffs are informed and believe, and based thereon allege, that after confirming the initial information in Defendants' records, the consumer is then transferred to a "closer" (at a domestic call center) on the VSC sale. Defendants offer the "Unlimited Mileage Full Coverage Protection Plan" insisting that the consumer must make a decision before they get off the phone call or they will lose the opportunity because Defendants say they will not call the consumer back.

33.    Defendants then explain that the Full Coverage Protection Plan is the highest level of protection available based on the age and mileage of the vehicle; and that "Full Coverage" means 75% of "Full Coverage for the entire vehicle front to back and top to bottom" and includes coverage on "All Big Ticket Items" such as: (1) "Engine and Transmission;" (2) "Electrical and Computer"; (3) "Heating and Air Conditioning;" (4) "Suspension and Braking Systems;" and (5) "Drive Axels and Steering;" as well as "Even Smaller Electrical Items" such as: (6) "Alternator and Starter, all the way down to the Power Windows and Stereo."

34.    Defendants also state that in addition to the "Extend Warranty" provided, "also included for peace of mind with the policy is towing and 24-hour emergency roadside assistance as a free benefit that comes with the coverage."  In other words, towing and roadside assistance are incidental to the VSC and its "Full Coverage" extended warranty policy.

35.    Defendants finish their VSC sale by offering financing options and mandating that the consumer make an initial monetary payment over the phone

prior to sending or agreeing to any written documentation. Plaintiffs and members of the Class made payments to Defendants over the phone, consummating the contractual relationship, without receiving any prior documentation. These initial down payments are initially processed and collected by AAP, but all subsequent payments by Plaintiffs and the Class were processed and collected by MEPCO.

36.     AAP took payment directly from Plaintiff Garcia over the phone during the prerecorded sales call to him on December 20, 2021, collecting a "down payment" of $155 through a bank transaction description "AAP 888-6 888-678-069 FL 9749."

37.     AAP took payment directly from Plaintiff Webb over the phone during the prerecorded sales call to him on October 6, 2021, collecting a "down payment" of $295 through a bank transaction description "AAP 800-941-9430 800-9418430 FL 10/06."

38.     After receiving the consumer's money, Defendants send a link to the consumer "for Policy confirmation" at "http://vsc-confirmation.com" which confirms the purchase of an "Extended Service Protection" Policy with a "Certificate of Coverage" forthcoming, and lists the "Important Benefits of the Policy," such as "Pays repair facility directly," "Transferable coverage," "Low deductible options," and "Protects your financial investment." The Defendants then also state that "Rental and Towing options available on most plans."

39.     Defendants ultimately send a purported "Ultimate Smart Club" document to the consumer with a section titled "Acceptance of Terms, Conditions and Coverage" and preprinted spaces for "Member Signature" and "Dealer Representative Signature."  These documents are not signed by Defendants or by the consumers; and are not necessary for the purchase contract which has already been confirmed with payment for the issuance of the Extended Service Protection Policy.

/ / /

40.     Plaintiffs are informed and believe that Defendants also populate the form document titled "Ultimate Smart Club" in their internal databases, and then subsequently alter various fields within the document at various times when it suits them to do so, such as changing the names of the "Seller" information, the "Effective Dates" and the "Membership Number."

41.     Defendants intentionally mislead the consumer into believing that this "Ultimate Smart Club" document confirms their "Dealer Loyalty Protection" and provides terms of the "Motor Club Membership" incidental to the VSC that Defendants call a "Extended Service Protection Policy."

42.     Defendants made the unsolicited, automated and/or pre-recorded calls in an attempt to obtain money from Plaintiffs and the Class, and in fact were successful in obtaining payments from Plaintiffs, including during the illegal telephone calls in the form of down payments on Vehicle Service Contracts.

43.     In furtherance of the common scheme by all Defendants, and as a direct result of the illegal telephone solicitations, MEPCO collected monthly payments from consumers for the benefit and profit of all Defendants in furtherance of the illegal scheme.

44.     MEPCO collected, and continues to collect, monthly payments of $146.67 directly from Plaintiff Garcia through automatic repeating charges, including on January 21, 2022, February 22, 2022, March 21, 2022, and April 21, 2022 through bank transactions all with the description "MEPCO*80039676 800-3976767 IL 9749."

45.     MEPCO collected monthly payments of $226.22 directly from Plaintiff Webb through automatic repeating charges, including on November 6, 2021 and December 6, 2021, through bank transactions with the descriptions "MEPCO*80039676 800-3976767 IL 11/06" and "MEPCO*80039676 800-3976767 IL 12/06", respectively.

/ / /

STONEBARGER LAW
A Professional Corporation

# V.

## CLASS ACTION ALLEGATIONS

46.    Plaintiffs bring this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The following nationwide Class and California CLRA Subclass may properly be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs are members of both the nationwide Class and the California CLRA Subclass.

47.    Plaintiffs seek to represent a nationwide Class of "all natural persons in the United States of America who, during the applicable statute of limitations, received a telephone call from Defendants that: (1) was initiated using an automatic telephone dialing system and/or an artificial or prerecorded voice; and (2) was initiated at a time when the called party had not given Defendants prior express consent for such calls."

48.    Plaintiffs seek to represent a California CLRA Subclass of "all natural persons in the State of California who, during the applicable statute of limitations, received a telephone call from Defendants that: (1) was initiated using an unsolicited prerecorded message; and (2) was initiated at a time when the called party had not given Defendants prior express consent for such calls."

49.    Excluded from the Class and Subclass are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

50.    This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation:

a. ***Numerosity:*** The Class and Subclass are so numerous that joinder of all members is impractical. Because Defendants operate large nationwide telemarketing schemes for the sale of Vehicle Service Contracts they have

STONEBARGER LAW
A Professional Corporation

made thousands of illegal calls, including thousands of calls to California consumers, establishing numerous members of the Class.

b. *Ascertainability:* The identities of the Class and Subclass members are ascertainable from Defendants' records.

c. *Common Questions Predominate:* There are questions of law and fact common to the Class and Subclass, which questions predominate over any questions affecting only individual members. The principal issues include, *inter alia*:

  i. Whether Defendants negligently caused violations of the Telephone Consumer Protection Act, 47 U.S.C. section 227, when telemarketing to Plaintiffs and the Class;

  ii. Whether Defendants willfully caused violations of the Telephone Consumer Protection Act, 47 U.S.C. section 227, when telemarketing to Plaintiffs and the Class;

  iii. Whether Defendants used an automatic telephone dialing system to call Plaintiffs and the Class;

  iv. The legality of Defendants' policies and procedures for obtaining prior express consent from its customers to place calls to their cellular telephones;

  v. Whether Defendants place calls to cellular telephones using an artificial or prerecorded voice;

  vi. Whether Defendants knowingly and willfully violated California Civil Code § 1770(a)(22)(A) as to the Subclass.

  vii. Whether Defendants disseminated an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or

STONEBARGER LAW
A Professional Corporation

STONEBARGER LAW
A Professional Corporation

the telephone number of the caller, and without obtaining the

consent of that person to listen to the prerecorded message.

viii.   Whether Defendants' telephone calls include an advertisement

and/or constitute telemarketing;

ix.   Whether Plaintiffs and the Class and Subclass are entitled to

damages for Defendants' actions; and

x.   Whether Defendants should be enjoined from engaging in such

conduct in the future.

d.   ***Typicality:*** Based on the conduct described above, Plaintiffs' claims are

typical of the claims of the members of the Class and the Subclass.

Plaintiffs and all members of the Class and the Subclass have similar

claims and remedies arising out of Defendants' common course of

conduct complained of herein.

e.   ***Adequacy:*** Plaintiffs will fairly and adequately protect the interests of

the members of the Class and the Subclass.  Plaintiffs are committed to

vigorously litigating this matter, and have retained counsel experienced

in handling class claims.  Neither Plaintiffs nor Plaintiffs' counsel have

any irreconcilable conflicting interests that might cause them not to

vigorously pursue this claim.

f.   ***Superiority:*** A class action is a superior method for the fair and efficient

adjudication of this controversy. Class-wide damages are essential to

induce Defendants to comply with the law. Management of these claims

is likely to present significantly fewer difficulties than those presented in

many class claims.  A class action is superior to other available means for

the fair and efficient adjudication of this controversy since individual

joinder of all members would be impracticable.  Class action treatment

will permit a large number of similarly situated persons to prosecute their

common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since individual member's claims for damages are relatively modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. An important public interest will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be realized, and the potential for inconsistent or contradictory adjudications will be avoided.

**VI.**

**<u>FIRST CAUSE OF ACTION</u>**
**Violations of Telephone Consumer Protection Act**
**47 U.S.C. Section 227, et seq.**

***(Automated Telephone Dialing System and Prerecorded/Artificial Voice Calls)***

51.    Plaintiffs, on behalf of themselves and all others similarly situated, realleges each and every preceding paragraph of this Class Action Complaint as if fully set forth herein.

52.    The Telephone Consumer Protection Act (TCPA) provides, in pertinent part: "It shall be unlawful for any person… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice - [...] (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; [...]"47 U.S.C. § 227(b)(1).

53.    A person may bring an action based on a violation of the TCPA to "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B).

STONEBARGER LAW
A Professional Corporation

If a court finds that the defendant willfully and knowingly violated the TCPA, it may increase the amount of the award to a maximum of three times this amount, or $1,500.00 per violation. 47 U.S.C. § 227(b)(3).

54.    The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. section 227 et. seq. As a result of Defendants' violations of 47 U.S.C. section 227 et. seq., Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of statute, pursuant to 47 U.S.C. section 227(b)(3)(B).

55.    Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## VII.

## SECOND CAUSE OF ACTION
### Violations of Telephone Consumer Protection Act
### 47 U.S.C. Section 227, et seq.

### *(Calling Telephone Numbers on Do Not Call Registry)*

56.    Plaintiffs, on behalf of themselves and all others similarly situated, realleges each and every preceding paragraph of this Class Action Complaint as if fully set forth herein.

57.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a

STONEBARGER LAW
A Professional Corporation

list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

59.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

60.     Defendants do not have a "Do Not Call" database, and do not have a "Do Not Call" policy that is written or in compliance with the National Do Not Call Registry.

61.     Defendants do not scrub their call lists against the National Do Not Call list or registry.

62.     Rather, Defendants routinely make calls to individuals, including members of the Class, that have listed their telephone numbers on the National Do Not Call Registry.

63.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. section 227 et. seq. As a result of Defendants' violations of 47 U.S.C. section 227 et. seq., Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of statute, pursuant to 47 U.S.C. section 227(b)(3)(B).

64.     Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

65.     WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

/ / /

/ / /

/ / /

/ / /

/ / /

STONEBARGER LAW
A Professional Corporation

**VIII.**

**THIRD CAUSE OF ACTION**

**Knowing and/or Willful Violations of Telephone Consumer Protection Act 47 U.S.C. Section 227, et seq.**

66.     Plaintiffs, on behalf of themselves and all others similarly situated, realleges each and every preceding paragraph of this Class Action Complaint as if fully set forth herein.

67.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. section 227 et. seq.

68.     Each of these violations was a willful and knowing violation of the law and makes Defendants liable for treble damages for each such violation in the amount of $1,500.00 per call.

69.     Plaintiffs and Class Members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

**IX.**

**FOURTH CAUSE OF ACTION**

**Violations of The Consumer Legal Remedies Act Cal. Civ. Code §§ 1750 Et Seq.**

**(The California CLRA Class Against All Defendants)**

70.     Plaintiffs, on behalf of themselves and all other California consumers similarly situated, realleges each and every preceding paragraph of this Class Action Complaint on behalf of the California CLRA Subclass as if fully set forth herein.

71.     California Civil Code § 1770(a)(22)(A) prohibits "disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice

1  first informing the person answering the telephone of the name of the caller or the

2  organization being represented, and either the address or the telephone number of

3  the caller, and without obtaining the consent of that person to listen to the

4  prerecorded message."

5      72.    The foregoing acts and omissions of Defendants constitute numerous

6  violations of the Cal. Civ. Code § 1770.

7      73.    California Civil Code § 1780(a) provides that any consumer who

8  suffers any damage as a result of practice declared to be unlawful by Section 1770

9  may bring an action to recover damages (of no less than $1000 in a class action),

10  injunctive relief, restitution, punitive damages, and any other relief that the court

11  deems proper.

12      WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

13  **<u>PRAYER FOR RELIEF</u>**

14      WHEREFORE, on behalf of herself and all others similarly situated,

15  Plaintiff demands judgment against Defendants and prays that this Court do the

16  following:

17      1.    That an order certifying the Class and Subclass defined herein be

18  entered designating Plaintiffs as representative of said Class and Subclass, and

19  appointing Plaintiffs' attorneys as Class Counsel;

20      2.    For statutory damages;

21      3.    For injunctive relief against Defendants under each cause of action;

22      4.    For actual damages in an amount according to proof;

23      5.    For other equitable relief;

24      6.    For attorneys' fees as provided by law;

25      7.    For attorney fees and costs under California Code of Civil Procedure

26  § 1021.5;

27      8.    For prejudgment interest as provided by law;

28      9.    For costs of suit; and

STONEBARGER LAW
A Professional Corporation

1         10.    For such other and further relief as this Court deems just and

2    equitable.

3    DATED: May 20, 2022                STONEBARGER LAW, APC

4                                      BRADY & VINDING

5

6                           By:   /s/ Gene J. Stonebarger

7                              Gene J. Stonebarger

8                              Attorneys for Plaintiffs and the Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STONEBARGER LAW
A Professional Corporation

FIRST AMENDED CLASS ACTION COMPLAINT