**KILPATRICK TOWNSEND &
STOCKTON LLP**
Raymond O. Aghaian (SBN 218294)
raghaian@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel: 310 248 3830/ Fax: 310 860 0363

Jeffrey H. Fisher (*pro hac vice*)
jfisher@kilpatricktownsend.com
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Tel: 404-815-6500 / Fax: 404-815-6555

Attorneys for Defendants
**THE FORTEGRA GROUP, LLC,
TIPTREE, INC.
AND AUTO KNIGHT MOTOR
CLUB**


**LOEB & LOEB LLP**
Benjamin R. King (SBN 205447)
bking@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorney For Defendant
**SING FOR SERVICE, LLC
d/b/a MEPCO**

**ENENSTEIN PHAM GLASS &
RABBAT LLP**
Teri T. Pham (SBN 193383)
tpham@EPGRLawyers.com
3200 Bristol Street, Suite 500
Costa Mesa, CA 92626
Phone:  (714) 292-0262
Fax:     (714) 464-4770

**GUAGLARDI & MELITI, LLP**
Jason Nunnermacker (*pro hac vice*)
jnunnermacker@adgmlaw.com
365 West Passaic Street, Suite 130
Rochelle Park, NJ 07662
Phone:  (201) 374-9090
Fax:     (201) 947-1010

Attorneys for Defendants
**DEALER LOYALTY
PROTECTION, INC. AND
RICHARD BENEVENTO**


**BECKSTRAND LAW OFFICES**
Dwight Beckstrand (SBN 256006)
dwight@beckstrandlaw.com
1339 W Darien Way
Santa Maria, California 93458
P: 805-235-7150
F: 800-317-0357

Attorney For Defendants
**PELICAN INVESTMENT
HOLDINGS, LLC AND GUS
RENNY**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| EDGAR GARCIA, an individual; and DEAN WEBB, an individual; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS GROUP, LLC , a Delaware Limited Liability Company, d/b/a AAP; and AUTO SERVICE DEPARTMENT; GUS RENNY, an individual and Corporate Agent; DEALER LOYALTY PROTECTION, INC., a Wyoming Corporation; RICHARD BENEVENTO, an individual and Corporate Agent; AUTO KNIGHT MOTOR CLUB, INC., a California Corporation; THE FORTEGRA GROUP, LLC, a Delaware Limited Liability Company; TIPTREE INC., a Maryland Corporation; and SING For Service, LLC d/b/a MEPCO, an Illinois Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 8:22-cv-00699-CJC-ADS<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING INSTRUCTIONS FROM THE NINTH CIRCUIT**<br><br>Date:        December 4, 2023<br>Time:        1:30 p.m.<br>Dept:        9, Santa Ana Courthouse<br>Before Hon. Cormac J. Carney<br><br>Complaint Filed: March 31, 2022<br>Complaint Amended: May 20, 2022 |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................. 1

ARGUMENT ......................................................................................... 2

    I.     The Ninth Circuit's Opinion. ................................................... 2

    II.    Defendants' "accept or return" theory is legally and factually viable. ....................................................................... 2

        A.    Courts regularly enforce "accept or return" arbitration agreements. ...................................................... 3

        B.    The parties formed valid "accept-or-return" arbitration agreements here. ...................................... 5

            1.    Plaintiffs were told they would receive a copy of the Agreement in the mail and could cancel and receive a refund if they did not agree to the terms and conditions. ...................................................... 6

            2.    Plaintiffs received a copy of the Agreement by mail. ............................................. 6

            3.    The Agreements contained an arbitration clause and allowed Plaintiffs to cancel for a full refund or to opt out of the arbitration clause. ...................................... 7

            4.    Plaintiffs did not cancel or opt out of the Agreements and continued making payments. .......................................................... 9

        C.    Ninth Circuit cases declining to enforce unsigned arbitration agreements involve fundamentally different facts. ...................................... 9

    III.   Defendants' clickwrap theory is factually viable. ......................... 11

CONCLUSION ................................................................................... 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Alkutkar v. Bumble Inc.*,
　No. 22-cv-00422-PJH, 2022 WL 4112360 (N.D. Cal. Sept. 8, 2022),
　*reconsideration denied*, No. 22-cv-00422-PJH, 2022 WL 16973253
　(N.D. Cal. Nov. 16, 2022) ................................................................................ 14

*Bischoff v. DirecTV, Inc.*,
　180 F. Supp. 2d 1097 (C.D. Cal. 2002) ......................................................... 4, 5

*Carnival Cruise Lines, Inc. v. Shute*,
　499 U.S. 585 (1991) ............................................................................................ 3

*Chau v. Pre-Paid Legal Servs., Inc.*,
　No. B270277, 2017 WL 604721 (Cal. Ct. App. Feb. 15, 2017) ................... 4, 11

*Dye v. Tamko Bldg. Prods., Inc.*,
　908 F.3d 675 (11th Cir. 2018) ............................................................................ 3

*Fleming v. Oliphant Fin., LLC*,
　304 Cal. Rptr. 3d 464, 88 Cal. App. 5th 13 (Cal. Ct. App. 2023) ...................... 4

*Higgs v. Auto Warranty Corp. of Am.*,
　134 F. App'x 828 (6th Cir. 2005) ............................................................ 3, 4, 11

*Knutson v. Sirius XM Radio Inc.*,
　771 F.3d 559 (9th Cir. 2014) .................................................................. 9, 10, 11

*Lima v. Gateway, Inc.*,
　886 F. Supp. 2d 1170 (C.D. Cal. 2012) .............................................................. 5

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*,
　804 F. Supp. 1512 (M.D. Fla. 1992) .................................................................. 3

*Murphy v. DIRECTV, Inc.*,
　No. 2:07-cv-06465-JHN-VBKx, 2011 WL 3319574 (C.D. Cal. Aug.
　2, 2011), *aff'd*, 724 F.3d 1218 (9th Cir. 2013) .................................................. 5

*Nguyen v. Barnes & Noble Inc.*,
　763 F.3d 1171 (9th Cir. 2014) .......................................................................... 12

# TABLE OF AUTHORITIES
(continued)

<u>Page</u>

*Norcia v. Samsung Telecommunications America, LLC*,
  845 F.3d 1279 (9th Cir. 2017) ................................................................. 9, 10, 11

*Rizvanovic v. United Parcel Serv., Inc.*,
  No. 1:21-cv-01278-CDB, 2023 WL 346800 (E.D. Cal. Jan. 20, 2023) ............. 14

*Salgado v. Carrows Rests., Inc.*,
  33 Cal. App. 5th 356, 244 Cal. Rptr. 3d 849 (2019) ........................................ 2

*Schmidt v. Samsung Elecs. Am., Inc.*,
  No. C16-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017) .......... 5, 11

*Schuldner v. ITC Fin. Licenses, Inc.*,
  No. A150522, 2018 WL 416839 (Cal. Ct. App. Jan. 16, 2018) ......................... 4

*United States v. Real Prop. Located at 9832 Richeon Ave.*,
  156 F. App'x 50 (9th Cir. 2005) ...................................................................... 14

*Webb v. Auto Knight Motor Club, Inc.*,
  No. 22-56153, 2023 WL 6058492 (9th Cir. Sept. 18, 2023) ......................*passim*

*Wright v. Sirius XM Radio Inc.*,
  No. SACV 16-01688 ......................................................................................... 5

*Zink v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  13 F.3d 330 (10th Cir. 1993) ........................................................................... 3

**INTRODUCTION**

Defendants seek to enforce valid arbitration clauses in motor club membership contracts that Plaintiffs Dean Webb and Edgar Garcia admit they purchased over the phone. This Court denied Defendants' Motion to Stay Pending Arbitration. Dkt. 64.

The Ninth Circuit vacated this Court's ruling. On remand, the Ninth Circuit directed this Court, as the trier of fact, to (1) evaluate the legal and factual viability of Defendants' "accept or return" theory and (2) to resolve the parties' competing factual positions on whether a valid "clickwrap" agreement exists. *Webb v. Auto Knight Motor Club, Inc.*, No. 22-56153, 2023 WL 6058492, at *2 (9th Cir. Sept. 18, 2023). The Court of Appeals explained that "the fact that Plaintiffs did not see a written agreement until after they had paid Defendants on the phone for purported extended warranties is not determinative of either of Defendants' theories of assent." *Id.*

Defendants' "accept or return" theory is legally and factually viable. Plaintiffs admit that they purchased a contract over the phone. Any reasonable person would understand that the terms and conditions of that contract would be memorialized in a written agreement. The evidence shows that Plaintiffs were told on the phone that a written agreement would follow by mail, and that Plaintiffs could cancel and obtain a refund if they did not agree to the terms and conditions. Plaintiffs not only failed to cancel or opt out of the arbitration clause, they continued making payments for months after receiving the terms and conditions, including the arbitration clause, in the mail. These acts independently establish assent, and courts have enforced arbitration clauses in similar "accept or return" agreements.

The evidence also shows that Plaintiffs downloaded and consented to the Agreement, including the broad arbitration clause and class action waiver, by downloading the Agreement and clicking "Agree." Plaintiffs' bare denials of assent are insufficient to overcome Defendants' documentary evidence.

The Court should grant Defendants' Motion to Stay Pending Arbitration.

1

**ARGUMENT**

2

## I.    The Ninth Circuit's Opinion.

3        This Court's original order did not directly address either Defendants' "accept

4   or return" theory or their clickwrap theory.  In ruling that Defendants had not proven

5   contractual assent, this Court found only that (1) "the parties agree that Plaintiffs did

6   not see [the Agreement] until after they had paid Defendants over the phone for

7   purported extended warranties," and (2) "the agreement Defendants submit in

8   seeking to compel arbitration looks markedly different than Mr. Webb's copy of the

9   agreement." Dkt. 64 at 7:16-19.

10       The Ninth Circuit rejected both findings, determining that "these statements

11   do not explain why either of Defendants' theories fail." *Webb*, 2023 WL 6058492,

12   at *2.  First, "the fact that Plaintiffs did not see a written agreement until after they

13   had paid Defendants on the phone for purported extended warranties is not

14   determinative of either of Defendants' theories of assent." *Id.*  Second, the

15   "supposed 'marked differences' between the parties' two versions of the agreement

16   boil down to variations in the cover pages rather than in their material terms." *Id.*

17       The Ninth Circuit remanded the case with specific instructions to

18   (1) "evaluate the legal and factual viability of Defendants' 'accept-or-return' theory"

19   and (2) "resolve the parties' competing positions on whether a valid 'clickwrap'

20   agreement exists." *Id.*

21

## II.    Defendants' "accept or return" theory is legally and factually viable.

22       The Court of Appeals rejected this Court's ruling that Plaintiffs' receipt of the

23   written contracts after making their initial payments over the phone alone precluded

24   Defendants' assent theories. *Webb*, 2023 WL 6058492, at *2 (citing *Salgado v.*

25   *Carrows Rests., Inc.*, 33 Cal. App. 5th 356, 360-62, 244 Cal. Rptr. 3d 849, 852-53

26   (2019) (explaining that California courts have rejected the contention that arbitration

27   agreements must "pre-date the actions giving rise to the dispute" and holding instead

28   that arbitration agreements "may be applied retroactively to transactions which

1    occurred prior to the execution of the arbitration agreement") (quoting *Zink v.*

2    *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993), and

3    *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King*, 804 F. Supp. 1512, 1514 (M.D.

4    Fla. 1992))).  Consistent with the numerous authorities enforcing "retroactive"

5    arbitration agreements, courts in California and elsewhere regularly have enforced

6    "accept or return" arbitration agreements.

7              **A.    Courts regularly enforce "accept or return" arbitration**
                       **agreements.**
8

9              Accept-or-return agreements are widely used and accepted by courts because

10   customers as a group are better off when companies use a "simple approve-or-

11   return" model.  *Dye v. Tamko Bldg. Prods., Inc.,* 908 F.3d 675, 683-84 (11th Cir.

12   2018) (enforcing arbitration agreement in "approve-or-return" contract when the

13   homeowner retained roof shingles for more than 30 days); *see also Carnival Cruise*

14   *Lines, Inc. v. Shute*, 499 U.S. 585, 592-93 (1991) (enforcing forum selection clause

15   in cruise ticket that plaintiff did not receive until after paying for tickets).  "The

16   'accept-or-reject' type of agreement 'relies on the proposition that a contract is

17   formed not at the time of purchase or earlier but rather when the purchaser either

18   rejects by seeking a refund or assents by not doing so within a specified time,

19   providing the purchaser with an opportunity to review the proposed terms.'"  *Higgs*

20   *v. Auto Warranty Corp. of Am.*, 134 F. App'x 828, 831 (6th Cir. 2005) (citation

21   omitted).

22             In *Higgs*, the consumer purchased an extended warranty by filling out an

23   application and mailing a check.  *Higgs*, 134 F. App'x at 829.  The application

24   indicated that he would later receive the full policy in the mail and that he would be

25   able to cancel for a full refund.  *Id.*  When the consumer filed suit, the provider

26   moved to compel arbitration, citing an arbitration clause in the policy.  *Id.*  The

27   district court denied the motion, finding there was no meeting of the minds as to the

28   arbitration clause.  *Id.* at 830.  The Sixth Circuit reversed, holding that the

- 3 -

1    agreement was an enforceable "accept-or-return" agreement.  The court found there

2    had been a meeting of the minds because Higgs "was given the opportunity to reject

3    [the service contract's] terms and obtain a full refund.  Instead, he kept the warranty,

4    thereby assenting to its terms, including the arbitration provision." *Id.* at 832.

5          California courts also have recognized the enforceability of "accept or return"

6    agreements.  In *Chau*, Chau filled out a membership application for Legal Shield's

7    services.  *Chau v. Pre-Paid Legal Servs., Inc.*, No. B270277, 2017 WL 604721, at

8    *1 (Cal. Ct. App. Feb. 15, 2017).  The application did not include an arbitration

9    clause but "stated that the written contract would be mailed to the applicant within

10   fourteen days." *Id.* at *1.  Although the court found Chau never signed the contract

11   containing the arbitration clause, it concluded that Chau's failure to opt-out of the

12   arbitration provision and continued payment of monthly fees constituted "implicit

13   acceptance of the terms of the written contract," including the arbitration clause.  *Id.*

14   at *3; *see also Fleming v. Oliphant Fin., LLC*, 304 Cal. Rptr. 3d 464, 473 n.5, 88

15   Cal. App. 5th 13 (Cal. Ct. App. 2023) (finding "[c]ourts have enforced arbitration

16   agreements against parties for failing to read or opt out of them" where "the party

17   indisputably received the agreement" and collecting cases); *Schuldner v. ITC Fin.*

18   *Licenses, Inc.*, No. A150522, 2018 WL 416839, at *7 (Cal. Ct. App. Jan. 16, 2018)

19   (finding "agreement not disclosed at the time of purchase may nevertheless be

20   enforceable," collecting cases).

21         Ninth Circuit district courts have also repeatedly enforced "accept-or-return"

22   agreements.  In *Bischoff v. DirecTV, Inc.*, the court found that an arbitration clause

23   in DIRECTV's terms and conditions could be enforced against a DIRECTV

24   customer although DIRECTV had provided the terms and conditions "after the

25   parties had already entered into their agreement for satellite programming."  180 F.

26   Supp. 2d 1097, 1103, 1105-06 (C.D. Cal. 2002).  The court noted that "[c]ustomers

27   as a group are better off when vendors skip costly and ineffectual steps such as

28   telephonic recitation, and instead use a simple approve-or-return device.  Competent

adults are bound by such documents, read or unread." *Id.* at 1105 (citation omitted).

Because after receiving DIRECTV's terms and conditions, the plaintiff failed to

seek a refund and continued to use the service, he was bound by the arbitration

clause. *Id.*; *see also Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688 JVS

(JCGx), 2017 WL 4676580, at *4, *7 (C.D. Cal. June 1, 2017) (applying California

state contract law and noting that "[s]imilarly, this Court would not expect Sirius to

negotiate its terms or read lengthy provisions over the phone.  Instead, it is

reasonable for Sirius to mail the provisions and give Wright an opportunity to

object."); *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1179 (C.D. Cal. 2012)

(enforcing limited warranty where plaintiff "had the opportunity to reject its terms

and cancel the sale once he received a written copy [but] did not do so").[1]

### B. The parties formed valid "accept-or-return" arbitration agreements here.

The undisputed facts show that Plaintiffs agreed to accept-or-return

agreements: (1) Plaintiffs were told over the phone that they would receive a copy of

the Agreement in the mail and could cancel and receive a refund if they did not

agree to the terms and conditions; (2) Plaintiffs each received a copy of the

Agreement by mail; (3) the Agreements contained an arbitration clause and class

action waiver; (4) the Agreements allowed Plaintiffs to cancel the Agreement for a

full refund or to opt-out of the arbitration clause; (5) Plaintiffs did not cancel or opt-

out; and (6) Plaintiffs continued making payments even after receiving the

---

[1] *See also Murphy v. DIRECTV, Inc.*, No. 2:07-cv-06465-JHN-VBKx, 2011 WL
3319574, at *2 (C.D. Cal. Aug. 2, 2011) (holding that "by accepting, rather than
canceling, their services after receiving the Customer Agreement, Plaintiffs
manifested their acceptance of the Customer Agreement"), *aff'd*, 724 F.3d 1218 (9th
Cir. 2013); *Schmidt v. Samsung Elecs. Am., Inc.*, No. C16-1725-JCC, 2017 WL
2289035, at *4 (W.D. Wash. May 25, 2017) (enforcing terms and conditions found
in a brochure included in Samsung phone box where plaintiff failed to timely
object).

Agreements.  The Agreements therefore constitutes enforceable "accept-or-return" agreements.

**1.   Plaintiffs were told they would receive a copy of the Agreement in the mail and could cancel and receive a refund if they did not agree to the terms and conditions.**

Plaintiffs do not dispute that, during the relevant phone calls, Plaintiffs Dean Webb and Edgar Garcia each agreed to buy a membership contract and made down payments over the phone of $295.00 and $155.00, respectively.  Amended Complaint ("Am. Compl.") [Dkt. 24] ¶¶ 36-37; Declaration of Vajira Samararatne ("Samararatne Decl.") [Dkt. 38-1] ¶ 3, Exs. B-C. Pelican's Director of Operations, Vajira Samararatne, states that, "[d]uring the call with a consumer, AAP's operators explain that the customer will receive the full policy within 14 days of purchase, that the customer should review the policy, and that if the customer does not approve of the terms, the customer has the right to cancel the agreement for a full refund within 30 days."  Second Declaration of Vajira Samararatne ("Second Samararatne Decl.") [Dkt. 60-1] ¶ 2.

**2.   Plaintiffs received a copy of the Agreement by mail.**

There is also no dispute that both Plaintiffs received copies of the Agreement in the mail within 14 days of making a down payment by phone.  Plaintiffs allege that "Defendants ultimately send a purported 'Ultimate Smart Club' document to the consumer," Am. Compl. ¶ 39, and Mr. Webb admits that the "Ultimate Smart Club" document was sent to him "by U.S. Mail."  Declaration of Dean Webb ("Webb Decl.") [Dkt. 51-7] ¶ 14.  Defendants also included "Mail Delivery Reports" showing delivery to Mr. Webb on October 14, 2021 and to Mr. Garcia on December 30, 2021. Second Samararatne Decl. ¶ 4, Ex. A.

While Plaintiffs previously denied receiving a copy of the Agreement by mail based on differences between the agreement attached to Mr. Samararatne's declaration and the agreement Mr. Webb received, the Ninth Circuit rejected that

- 6 -

argument, finding that the differences "boil down to variations in the cover pages rather than in their material terms." *Webb*, 2023 WL 6058492, at *2.  In any case, there is no dispute about the agreements Plaintiffs received.[2]  Mr. Samararatne's Declaration supporting this brief includes the Agreement each Plaintiff actually received.  *See* Third Declaration of Vajira Samararatne ¶¶ 2-3, Exs. A-B.

There can be no reasonable dispute that both Plaintiffs received the Agreement in the mail.

### 3. The Agreements contained an arbitration clause and allowed Plaintiffs to cancel for a full refund or to opt out of the arbitration clause.

The Agreements Plaintiffs received, titled the Ultimate Smart Club agreement, has (1) a cover page (also described as a "Declarations Page") containing customer-specific information and then (2) an eight-page standard contract titled "BENEFITS AND LIMITATIONS OF MEMBERSHIPS."  Third Samararatne Decl., ¶ 5, Exs. A & B (copies of the Ultimate Smart Club Agreement sent to Plaintiffs ("Agreement")).  The cover page of the Agreements includes the following language: "**You** acknowledge **Your** understanding of and agree to the **Dispute Resolution/Arbitration Agreement and Class Action Waiver** section in this **Membership**.  Refer to the Dispute Resolution/ Arbitration Agreement and Class Action Waiver section for opt-out instructions."  *Id.* at 1; Webb Decl., Ex. B (cover page of the Ultimate Smart Club Agreement Mr. Webb received).

The "**DISPUTE RESOLUTION/ARBITRATION AGREEMENT AND CLASS ACTION WAIVER**" begins on the fifth page of the standard contract document, places numerous words and several paragraphs in bolded font, and comprises three full pages of the contract.  Agreement at 5-8.  The broad agreement

---

[2] Mr. Samararatne confirmed that the cover page attached to Mr. Webb's Declaration was the cover page Mr. Webb received. Second Samararatne Decl. ¶ 5. He explained that his original declaration inadvertently attached an internal copy with a different cover page. *Id.* Mr. Webb has never claimed that the material terms of the agreement he received differ from the material terms of the agreement attached to Mr. Samararatne's Declaration. *Id.*

to arbitrate expressly applies to claims relating to the earlier sale of the policies, encompassing "any and all claims" related "in any way" to Plaintiffs' "Membership" and unambiguously including claims "related to the underlying transaction giving rise to this Membership, or claims related to the sale . . . of this Membership . . . ." *Id.* at 6.

The arbitration agreement further provides that "Claims" subject to arbitration "shall be given the broadest meaning possible and includes, without limitation, . . . Claims arising under contract, tort, [or] statute . . . and Claims against any of [Auto Knight's] affiliates, subsidiaries, divisions, directors, officers, employees, representatives, agents, successors, or assigns." *Id.* The Agreements also assign any dispute about arbitrability to the arbitrator. *Id.* ("[T]he arbitrator shall have exclusive authority to decide all issues related to the enforcement, applicability, scope, validity, and interpretation of this Arbitration Agreement . . . .").

The entire paragraph titled "**CLASS ACTION WAIVER**" has been bolded and contains, in addition to the fully capitalized title, the fully capitalized sentence "**NO CLAIM WILL BE ARBITRATED ON A CLASS ACTION BASIS.**" *Id.* at 7. This paragraph explains that "[a]ll Claims must be brought solely in an individual capacity, and not as a plaintiff or class member in any purported class action," and that the parties, including Plaintiffs, "expressly waive any right or ability to bring, assert, maintain, or participate in any Class Action . . . ." *Id.*

The final paragraph of the dispute resolution section of the Agreement, titled "**OPT-OUT PROVISION**," includes the following bolded, underlined, and fully capitalized text: "**YOU SHALL HAVE THE RIGHT TO OPT OUT OF THIS ARBITRATION AGREEMENT AND CLASS ACTION WAIVER BY PROVIDING WRITTEN NOTICE OF YOUR INTENTION TO DO SO TO US WITHIN THIRTY (30) DAYS OF THE PURCHASE OF THIS MEMBERSHIP (THE DATE OF PURCHASE BEING INDICATED ON YOUR**

- 8 -

1  **MEMBERSHIP**).” *Id.* at 4.  The remainder of this paragraph provides the details for

2  opting out of the arbitration agreement and class action waiver.  *Id.*

3          **4.    Plaintiffs did not cancel or opt out of the Agreements
                   and continued making payments.**
4

5          Plaintiffs did not exercise their right to cancel the Agreement or to opt out of

6  the arbitration agreement.  Samararatne Decl. ¶¶ 6, 12.  To the contrary, Plaintiffs

7  continued to make payments for months after they received the Agreement.  Webb

8  Decl. ¶ 16 (stating he made payments on November 6, 2021, and December 6, 2021);

9  Declaration of Edgar Garcia (“Garcia Decl.”) Dkt. 51-4 ¶ 15 (stating he made

10  payments on “January 1, 2022, February 22, 2022, March 21, 2022, and April 21,

11  2022”).

12          **C.    Ninth Circuit cases declining to enforce unsigned arbitration
                   agreements involve fundamentally different facts.**
13

14          Although the Ninth Circuit declined to enforce unsigned arbitration agreements

15  in *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279, 1285 (9th

16  Cir. 2017), and *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014),

17  those cases involve fundamentally distinguishable facts.

18          Applying the test articulated in *Norcia* to the “accept-and-return” facts

19  presented here yields a different result.  In *Norcia*, this Court found that “[c]ourts

20  must determine whether the outward manifestations of consent would lead a

21  reasonable person to believe the offeree has assented to the agreement.”  845 F.3d at

22  1284 (quoting *Knutson*, 771 F.3d at 565).

23          When Norcia purchased a Samsung phone, the box contained a 101-page

24  Product Safety & Warranty Information brochure.  *Id.* at 1282.  That brochure

25  included a broad arbitration provision.  *Id.*  Norcia filed a class action alleging

26  Samsung made misrepresentations about storage capacity.  *Id.* at 1283.  Samsung

27  moved to compel arbitration.

28

DEFENDANTS’ SUPPLEMENTAL BRIEF ADDRESSING INSTRUCTIONS FROM THE NINTH CIRCUIT
CASE NO. 8:22-cv-00699-CJC-ADS

1       The Ninth Circuit affirmed the trial court's denial of the motion to compel.

2  The court concluded that a "reasonable person in Norcia's position would not be on

3  notice that the brochure contained a freestanding obligation outside the scope of the

4  warranty." *Id.* at 1290.  Nor would a reasonable person understand that "failing to

5  opt out of an arbitration provision contained within the warranty constituted assent

6  to a provision requiring arbitration of all claims against the seller, including claims

7  not involving the warranty." *Id.*

8       Similarly, in *Knutson*, the consumer purchased a vehicle from Toyota that

9  included a free trial of SiriusXM radio. 771 F.3d at 562.  A month after he activated

10  the radio, he received a "Welcome Kit" that contained a Customer Agreement with an

11  arbitration clause and class action waiver.  The notice stated that the customer

12  accepted the terms unless he cancelled within three days of activating the radio.  *Id.*

13  Knutson filed a TCPA class action and SiriusXM moved to compel arbitration.  *Id.* at

14  546.  The Ninth Circuit reversed the trial court and found no agreement had been

15  formed: "A reasonable person in Knutson's position could not be expected to

16  understand that purchasing a vehicle from Toyota would simultaneously bind him or

17  her to any contract with Sirius XM, let alone one that contained an arbitration

18  provision without any notice of such terms." *Id.* at 566.

19       Unlike the lengthy contracts in *Knutson* and *Norcia*, the Agreements here

20  spanned a total of nine pages: (1) a one-page cover page containing customer-specific

21  information as well as notice of the arbitration and opt-out provision; and (2) an

22  eight-page standard document addressing the "BENEFITS AND LIMITATIONS OF

23  MEMBERSHIPS," three pages of which consist of the arbitration agreement and

24  class action waiver.  *See generally* Agreement.  The arbitration agreement is

25  referenced on the cover page and then bold and conspicuously shown on pages five

26  through eight of the standard document.  *Id.* at 5.  The "**CANCELLATION AND**

27  **TRANSFER OF THIS MEMBERSHIP**" provision is also bold.  *Id.*

28

- 10 -

In addition to the conspicuous nature of the terms, *Norcia* and *Knutson* involved fundamentally different transactions. In *Norcia* and *Knutson*, the courts found that the plaintiff's purchase of a thing (a phone and radio service) would not put a reasonable person on notice that it was entering into a broad arbitration contract with the seller (or in *Knutson* with an entirely different party). Plaintiffs, in contrast, were buying a motor club membership—literally a contract. Any reasonable person would understand that the terms and conditions of the membership would be memorialized in a written contract. Plaintiffs would need to see the Agreement to understand not only dispute resolution, but also basic terms like who to call to get roadside assistance, what the benefits are, and how to submit a claim for reimbursement. Indeed, the evidence shows that Defendants told Plaintiffs during the initial phone call that they would get the contract in the mail, that they should review the contract, and that they could cancel and receive a full refund if they did not agree to the terms. Second Samararatne Decl. ¶ 2.

Plaintiffs' failure to seek a refund—instead continuing to make monthly payments—independently establishes Plaintiffs' assent to the Agreements. *See Chau*, 2017 WL 604721, at *1 (enforcing arbitration clause in unsigned LegalShield contract sent after purchase); *Higgs*, 134 F. App'x at 832 (enforcing arbitration provision in unsigned vehicle warranty contract sent after plaintiff had purchased and paid for the contract); *Schmidt*, 2017 WL 2289035, at *4 ("Plaintiffs have more notice of an arbitration agreement here than in either *Norcia* . . . The Court finds that a 'reasonable person' was on notice of the arbitration agreement, and thus Plaintiffs assented under California law.").

## III.  Defendants' clickwrap theory is factually viable.

Because there is no dispute that clickwrap agreements are enforceable, the Ninth Circuit directed the Court to address only the factual question of whether a valid clickwrap agreement exists. *Webb*, 2023 WL 6058492, at *2. The evidence shows that Plaintiffs downloaded and assented to the terms of the Agreement online,

including the arbitration clause and class action waiver contained in the three-page standard contract terms.  Samararatne Decl. ¶¶ 4, 9.  The Court should find the parties entered into a valid clickwrap agreement.

In an enforceable "clickwrap" agreement, "website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014) (citation omitted).  Defendants submitted documentary evidence showing that both Plaintiffs electronically assented to the agreement.

Mr. Samararatne explains that following a call in which the customer agrees to sign up for a policy, the customer receives a confirmation link by text and email. Second Samararatne Decl. ¶ 3.  If the customer clicks the link, it opens a welcome letter that includes a link to the Agreement.  *Id.*  Defendants' business records show that Mr. Webb and Mr. Garcia each downloaded the Agreement and confirmed the terms and conditions (including the arbitration clause and class action waiver) electronically, by clicking a box next to "I agree to Terms & Conditions." Samararatne Decl. ¶ 4, Ex. C (document confirming Mr. Webb's assent to the Agreement); ¶ 9, Ex. E (document confirming Mr. Garcia's assent to the Agreement)). Defendants excerpt the evidence showing Mr. Webb's electronic assent [Samararatne Decl. ¶ 4, Ex. C] below:

DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING INSTRUCTIONS FROM THE NINTH CIRCUIT
CASE NO. 8:22-cv-00699-CJC-ADS

1    Mr. Webb and Mr. Garcia acknowledge receiving a confirmation link but deny

2  downloading and accepting the Agreement.  Garcia Decl. ¶ 14; Webb Decl. ¶¶ 12-13.

3  They offer inconsistent explanations of their denials.  Mr. Webb attaches a "purchase

4  confirmation page" he claims he received after making payment over the phone.

5  Webb Decl. ¶ 13, Ex. A (purchase confirmation page)).  Counsel for Plaintiffs,

6  Michael Vinding, submitted a separate declaration that contradicts Mr. Webb's

7  account.  Declaration of Michael Vinding [Dkt. 51-1].  Mr. Vinding attaches a

8  different welcome letter that, based on his "preliminary investigation," he believes

9  Plaintiffs received "immediately upon the conclusion of the telephone call."  *Id.* ¶ 7,

10  Ex. B (screenshots of web pages).

11    Mr. Garcia states, without further explanation, that he "did not click through

12  any of the links that were texted or emailed to me."  Garcia Decl. ¶ 14.  And Mr.

13  Garcia attached the below screenshot of the email confirmation he received; the text

14  of the URL shows that he signed up under a fake name (Meyer Gregory).  *Id.* ¶ 14,

15  Ex. B (screenshot of "Auto Service Contract Confirmation" email).



24    Defendants' records show Mr. Garcia downloaded and assented to the

25  Agreement under the name Meyer Gregory.  Samararatne Decl. ¶ 9, Ex. E

26  (confirmation record)).

27    Ultimately, the record shows that both Plaintiffs admit to receiving a copy of

28  this confirmation email [Garcia Decl. ¶ 14; Webb Decl. ¶¶12-13], and Defendants'

records confirm that both Plaintiffs clicked on the link included in the confirmation email, downloaded the Agreement, and clicked to agree to the terms and conditions of the Agreement.  Samararatne Decl. ¶ 4, Ex. C (document confirming Mr. Webb's assent to the Agreement); ¶ 9, Ex. E (document confirming Mr. Garcia's assent to the Agreement).

Plaintiffs provided no documentary evidence to the contrary and cannot overcome Defendants' documentary evidence of electronic consent through unsupported, bare denials.  *See, e.g.*, *United States v. Real Prop. Located at 9832 Richeon Ave.*, 156 F. App'x 50, 52 (9th Cir. 2005) (holding bare denials from deposition testimony not sufficient to create a genuine issue of material fact); *Rizvanovic v. United Parcel Serv., Inc.*, No. 1:21-cv-01278-CDB, 2023 WL 346800, at *7 (E.D. Cal. Jan. 20, 2023) (enforcing arbitration agreement and finding plaintiffs' bare denial of assent insufficient to overcome witness declaration "based on his personal knowledge and experience of Defendant's application process, a regularly conducted activity").[3]  If parties could avoid enforcement of electronic contracts through a bare denial that they clicked through, electronic assent would be worthless.

Because Plaintiffs electronically assented to the Agreement, it is an enforceable clickwrap agreement.  The broad language in the Agreement's arbitration clause encompasses Plaintiffs' current TCPA claims challenging Defendants' "sale[s]" to Plaintiffs.

## CONCLUSION

For all these reasons, Defendants respectfully ask the Court to stay this action pending the resolution of a related arbitration.

---

[3] *See also Alkutkar v. Bumble Inc.*, No. 22-cv-00422-PJH, 2022 WL 4112360, at *6 (N.D. Cal. Sept. 8, 2022) (finding "the burden of authenticating an electronic signature is not great," concluding employee's bare denial insufficient to overcome defendants' declarations and documents supporting electronic assent (citation omitted)), *reconsideration denied*, No. 22-cv-00422-PJH, 2022 WL 16973253 (N.D. Cal. Nov. 16, 2022).

1    DATED:  November 3, 2023          Respectfully submitted,

2                                      KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                      By:*/s/ Jeffrey H. Fisher*
                                          JEFFREY H. FISHER
5
                                       Attorneys for Defendants
6                                      **THE FORTEGRA GROUP, LLC, TIPTREE,
                                       INC. AND AUTO KNIGHT MOTOR CLUB**
7

8    DATED:  November 3, 2023          LOEB & LOEB LLP

9

10                                     By:*/s/ Benjamin R. King*
                                          BENJAMIN R. KING
11
                                       Attorney for Defendant
12                                     **SING FOR SERVICE, LLC d/b/a MEPCO**

13   DATED:  November 3, 2023
                                       ENENSTEIN PHAM & GLASS
14

15

16                                     By:*/s/ Teri T. Pham*
                                          TERI T. PHAM
17                                     Attorneys for Defendants

18                                     **DEALER LOYALTY PROTECTION, INC.
                                       AND RICHARD BENEVENTO**
19
     DATED:  November 3, 2023
20                                     BECKSTRAND LAW OFFICES

21

22                                     By:*/s/ Dwight Beckstrand*
                                          DWIGHT BECKSTRAND
23
                                       Attorney For Defendants
24                                     **PELICAN INVESTMENT HOLDINGS, LLC
                                       AND GUS RENNY**

25

26

27

28

- 15 -

## <u>ATTESTATION OF E-FILED SIGNATURE</u>

I, Jeffrey H. Fisher, am the ECF User whose ID and password are being used to file this **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY PENDING APPEAL**.  In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby attest that counsel for Defendants have concurred in this filing.

/s/ *Jeffrey H. Fisher*
Jeffrey H. Fisher

22764369V.2

DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING INSTRUCTIONS FROM THE NINTH CIRCUIT
CASE NO. 8:22-cv-00699-CJC-ADS