GENE J. STONEBARGER (Cal. State Bar No. 209461)
gstonebarger@stonebargerlaw.com
STONEBARGER LAW, APC
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Telephone: (916) 235-7140

MICHAEL E. VINDING (Cal. State Bar No. 178359)
mvinding@bradyvinding.com
BRADY & VINDING
400 Capitol Mall, Suite 2640
Sacramento, CA 95814
Telephone: (916) 446-3400

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| EDGAR GARCIA, an individual; and DEAN WEBB, an individual; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PELICAN INVESTMENT HOLDINGS GROUP, LLC, a Delaware Limited Liability Company, d/b/a AAP and AUTO SERVICE DEPARTMENT; GUS RENNY, an individual and Corporate Agent; DEALER LOYALTY PROTECTION, INC., a Wyoming Corporation; RICHARD BENEVENTO, an individual and Corporate Agent; AUTO KNIGHT MOTOR CLUB, INC., a California Corporation; THE FORTEGRA GROUP, LLC, a Delaware Limited Liability Company; TIPTREE INC., a Maryland Corporation; and SING For Service, LLC d/b/a MEPCO, an Illinois Limited Liability Company; and DOES 1 through 50, inclusive<br><br>Defendants. | Case No.: 8:22-cv-00699-CJC-ADS<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO STAY PENDING ARBITRATION [Dkt. 38]**<br><br>Date:  December 4, 2023<br>Time:  1:30<br>Ctrm:  9B<br>Judge: Hon. Cormac J. Carney |

## I. INTRODUCTION

Plaintiffs EDGAR GARCIA and DEAN WEBB ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this Supplemental Brief in furtherance of their Opposition to Defendants' Motion to Stay Pending Arbitration [Dkt. 38], and for the purpose of addressing the instructions from the Ninth Circuit Court of Appeals in its Memorandum [Dkt. 95], including new relevant law or facts.

In this putative class action, Plaintiffs allege that Defendants Pelican Investment Holdings Group, LLC ("Pelican"), d/b/a AAP and Auto Service Department, Dealer Loyalty Protection, Inc. ("DLP"), Richard Benevento, Auto Knight Motor Club, Inc. ("Auto Knight"), and Sing For Service, LLC d/b/a Mepco ("Mepco") violated the Telephone Consumer Protection Act and California's Consumer Legal Remedies Act by making "unsolicited and un-consented to automated prerecorded telephone calls" to Plaintiffs that turned out to be a scam to purchase vehicle service contracts disguised as extended car warranties or motor club memberships. (*See generally* Dkt. 24 [First Amended Class Action Complaint, hereinafter "FAC"].) As noted below, the State of California agrees.

## II. PROCEDURAL BACKGROUND

After Plaintiffs initiated this Action in California State Court, Defendant DLP Removed the Action to this Court on March 31, 2022. (Dkt. 1.) On April 29, 2022, Defendants filed a Joint Motion to Stay the Case Pending Arbitration. (Dkt. 15.) Thereafter, Plaintiffs filed their FAC on May 20, 2022. (Dkt. 24.) The Court entered an Order on May 26, 2022 regarding to Defendants' original Motion to Stay (Dkt. 26) that was ultimately Vacated and set aside pursuant to the Court's Order at Dkt. 34.)

On September 19, 2022, Defendants jointly filed a renewed Motion to Stay Proceedings Pending Arbitration. (Dkt. 38.) After considering Plaintiffs Opposition

1 and Defendants Joint Reply, on November 10, 2022, the Court issued its Order
2 Denying Defendants' Motion to Stay Proceedings Pending Arbitration (Dkt. 38),
3 Denying Mepco's Motion to Dismiss (Dkt. 37), Granting In Part And Denying In
4 Part Fortegra Defendants' Motion To Dismiss (Dkt. 40), Joined by DLP and Mr.
5 Benevento (Dkts. 43, 48), and Granting Mr. Renny's Motion to Dismiss (Dkt. 41).
6 (Dkt. 64.)

7 Without seeking any leave from the Court to file Pleadings late and outside of
8 the clear statutory periods set forth in the Federal Rules of Civil Procedure: each of
9 the Defendants filed late Answers in December 6, 2022 (Dkt. 68, 69, 72 and 78).
10 Immediately after filing their respective Answers, the Defendants filed Notices of
11 Appeal "from the Order entered by this Court on November 10, 2022 (Dkt. No. 64),
12 denying Defendants' Motion to Stay Pending Arbitration." (Dkts. 70, 73 and 79.)

13 On January 4, 2023, the Court ordered this matter stayed in its entirety
14 pending the outcome of the appeal in the Ninth Circuit.

15 On September 18, 2023, the Ninth Circuit Court of Appeals issued a
16 memorandum disposition vacating this Court's November 10, 2022 order [Dkt. 64].
17 The Ninth Circuit Court of Appeals remanded the matter to the District Court to
18 resolve the parties' competing factual positions on whether a valid "clickwrap"
19 agreement exists and to evaluate the legal and factual viability of Defendants' accept
20 or return theory. [Dkt. 95.]

21 On October 11, 2023, the Ninth Circuit Court of Appeals issued a Mandate as
22 follows, "The judgment of this Court, entered September 18, 2023, takes effect this
23 date. This constitutes the formal mandate of this Court issued pursuant to Rule 41(a)
24 of the Federal Rules of Appellate Procedure."

25 **III.   THE NINTH CIRCUIT COURT OF APPEALS MEMORANDUM**

26 The Ninth Circuit Court of Appeals vacated and remanded this Court's
27 November 10, 2022 Order [Dkt. 64], instructing that "[o]n remand, the district court
28 must, as the finder of fact, resolve the parties' competing factual positions on

whether a valid "clickwrap" agreement exists and must evaluate the legal and factual viability of Defendants' "accept or return" theory." [Dkt. 95, p. 7.]

### IV. THE AGREEMENTS RELIED UPON BY DEFENDANTS ARE VOID *AB INITIO*

On August 22, 2023, the California Department of Insurance filed formal action against Auto Knight Motor Club, Inc. ("Auto Knight"), File No. GG 2022 00267 [Company No. 4932-0; Lic. No. 0F82046], as follows: NOTICE OF INTENT TO REVOKE OR SUSPEND CERTIFICATE OF AUTHORITY [Ins. Code. §12164], ORDER TO SHOW CAUSE RE. CEASE AND DESIST [Ins. Code §12921.8 (a)(2)], ORDER TO SHOW CAUSE RE MONETARY PENALTY [Ins. Code §§790.03 and 12921.8(a)(3)], and ORDER TO SHOW CAUSE RE. INDUSTRY BAN [Ins. Code §1748.5(b)]; and ACCUSATION and ORDER TO SHOW CAUSE RE INDUSTRY BAN [Ins. Code §1748.5(b)] *In the Matter of the Licenses and Licensing Rights of Auto Knight Motor Club, Inc.* (See Exhibit 1 to Declaration of Michael Vinding in Support of Supplemental Brief ("Vinding Decl."), Exhibit 1, p. 3-4.)

Also on August 22, 2023, the California Department of Insurance filed formal action against Dealer Loyalty Protection, Inc. ("DLP") as follows: STATEMENT OF ISSUES [Ins. Code §§1666 and 1668], ORDER TO SHOW CAUSE RE CEASE AND DESIST [Ins. Code §12921.8(a)(2)], ORDER TO SHOW CAUSE RE MONETARY PENALTY [Ins. Code §§790.03 and 12921.8(a)(3)], AND ORDER TO SHOW CAUSE RE INDUSTRY BAN [Ins. Code §1748.5(b)] *In the Matter Of the Application of Dealer Loyalty Protection, Inc*. (*Id.*)

Also on August 22, 2023, the California Department of Insurance filed formal action against Richard Benevento [Lic. No. 4106359] as follows: ACCUSATION [Ins. Code §§ 1668 and 1738], AND ORDER TO SHOW CAUSE RE. INDUSTRY BAN [Ins. Code §1748.5(b)] *In the Matter of the Licenses and Licensing Rights of Richard Benevento*. (*Id.*)

After extensive investigation, the California Department of Insurance has found "that Dealer Loyalty Protection, Inc. and Auto Knight Motor Club, Inc. acted in concert to sell hundreds of illegal motor club contracts to Californians through unlicensed sellers who, at times, robocalled consumers registered to the National Do Not Call Registry and/or used 'bait and switch' tactics by misrepresenting motor club contracts as a vehicle service contracts and/or by promising nonexistent or illegal benefits." (*Id.*, p. 6) "The Department also seeks monetary penalties for unfair practices, for participating in unlicensed activity and aiding and abetting others, as well as an industry ban to exclude Auto Knight, Dealer Loyalty, and Richard Benevento from participating in any business regulated by the California Insurance Code." (*Id.*, p. 7.)

With regard to the contracts at issue in this case containing the "Arbitration Agreements" Defendants seek to enforce against the named Plaintiffs, the California Department of Insurance has specifically found that the contracts are "void *ab initio*." (*Id.*, p. 14-15.) Specifically, the with regard to Plaintiff Webb, the Department found that "Pelican sold unapproved AKMC – MC motor club contract "DLP-Ultimate-MC Rev: 07/2020" dated November 5, 2021, for $4,367.00 to Dean Webb of Costa Mesa, California. This sale of the unapproved DLP-Ultimate-MC Rev: 07/2020 contract to Dean Webb is void *ab initio*." (*Id.*, p. 14, ¶39.) Specifically, the with regard to Plaintiff Garcia, the Department found that "Pelican sold unapproved AKMC – MC motor club contract "DLP-Ultimate-MC Rev: 07/2020" dated December 20, 2021, for $3,675.00 to Edgar Garcia aka Gregory Meyer of Costa Mesa, California. The sale of the unapproved DLP-Ultimate-MC Rev: 07/2020 contract to Edgar Garcia is void *ab initio*." (*Id.*, pp. 14-15, ¶40.)

The Department found that Auto Knight "knowingly provided DLP with unapproved motor club contracts identifying DLP as the administrator and whose sub-producers sold the same to Californians Lonnie Brown, Linnea Quinones, **Dean Webb, and Edgar Garcia**." (*Id.*, p. 14-15, ¶42; emphasis added.)

## V. ARGUMENT

### A. Legal Standard

"[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Johnson v. Walmart Inc.*, 57 F.4th 677, 680-681 (9th Cir, Jan. 10, 2023); citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044-45 (9th Cir. 2009) ("The presumption in favor of arbitration . . . does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." (internal quotation marks and citation omitted)).

As the parties seeking to compel arbitration, Defendants bear the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. See *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). If "the existence of an arbitration agreement is at issue and thus the presumption in favor of arbitrability does not apply, 'we use general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists.'" *Johnson v. Walmart Inc.*, 57 F.4th at 681-682 (internal citations omitted). "California courts interpret contracts containing arbitration provisions by application of the plain meaning rule—words of a contract are given their usual and ordinary meaning." *Id.* "And under California law, a contract must be 'interpreted as a whole.'" *Id.* citing *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) ("reversing the district court's order compelling arbitration where the court failed to interpret an arbitration clause in the context of the contract as a whole"). The Court must "interpret the meaning of individual arbitration clauses 'in connection with the rest of the agreement' and 'not detached portions thereof.'" *Id.*

"The district court's role on a motion to compel arbitration is simply to determine whether a valid arbitration agreement exists and whether that agreement encompasses the claims at issue." *Costless Wholesale, Inc. v. Amazon.Com Servs.*

*LLC*, 2023 U.S. Dist. LEXIS 171216, *5-6 (C.D. Cal., September 20, 2023) (see also *Nghiem v. Dick's Sporting Goods, Inc*., 2016 U.S. Dist. LEXIS 89429, *4 (July 5, 2016).

"Under the FAA, an arbitration agreement is unenforceable when it is invalid under 'generally applicable contract defenses' recognized by state law, such as 'unconscionability.'" *Costless Wholesale, Inc.*, 2023 U.S. Dist. LEXIS 171216, *5-6; citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). Under California law, the necessary elements for a contract are: (1) "[p]arties are capable of contracting"; (2) "[t]heir consent"; (3) "[a] lawful object"; and (4) "[s]ufficient cause or consideration." *U.S. ex rel. Oliver v. Parsons Co*., 195 F.3d 457, 462 (9th Cir. 1999) (quoting CAL. CIV. CODE § 1550).

"Applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Maranda v. Hyundai Motor Am., Inc*., 2023 U.S. Dist. LEXIS 181382, *14 (C.D. Cal., October 2, 2023); citing *Ticknor v. Choice Hotels Int'l, Inc*., 265 F.3d 931, 937 (9th Cir. 2001) (internal citation omitted).

### B. The Contracts Here Which Include the Arbitration Clause at Issue are Illegal and are Void *Ab Initio*

As set forth above, the California Department of Insurance has specifically found that the contracts here that Defendants are attempting to enforce are "void *ab initio*." (Exhibit 1 to Vinding Decl.*,* pp. 12-13.) This is fatal to Defendants' Motion which should be summarily denied on this basis alone.

### C. No Valid "Clickwrap" Arbitration Agreement Exists

"A 'clickwrap' agreement is one in which an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." *Veribi, LLC v. Compass Mining, Inc*., 2023 U.S. Dist. LEXIS 12333, *9 (C.D. Cal., Jan. 20, 2023).

///

In its Order [Dkt. 64] the Court correctly recited the facts at issue as follows:

> After Defendants receive money from consumers, they send a link "for Policy confirmation" at "http://vsc-confirmation.com" (with "vsc" standing for "vehicle service contract") which confirms the purchase of an "Extended Service Protection" Policy with a "Certificate of Coverage" forthcoming. (*Id.* ¶ 38.) "Important Benefits of the Policy" are listed to include "[p]ays repair facility directly," "[t]ransferable coverage," "[l]ow deductible options," and "[p]rotects your financial investment." The document further states that "Rental and Towing options available on most plans." Later, Defendants send an "Ultimate Smart Club" agreement with a section titled "Acceptance of Terms, Conditions and Coverage" and preprinted spaces for "Member Signature" and "Dealer Representative Signature." (*Id.* ¶ 39.) Neither Defendants nor the consumer signs these documents. (*Id.*) In the end, when Plaintiffs believe they are buying an extended warranty, what the documents Defendants send reflect are a "motor club membership" incidental to a vehicle service contract. (*Id.* ¶ 41.) [Dkt. 64, p. 3:12-24.]

[And]

> They allege that Defendants did not obtain their consent before initiating calls. (FAC ¶ 29.) Instead, "as part of Defendants' scheme consent forms were retroactively populated through a website utilized by AAP called 'policy-hub.com' to create the appearance of prior consent despite the lack of such prior consent." (*Id.*) Plaintiffs further allege that the Ultimate Smart Club Membership Agreement upon which Defendants rely is only mailed to consumers about a week after they make their first payment, and is not signed by either Defendants or the consumer. (*Id.* ¶ 39.) What is more, Mr. Webb submits the version of the agreement he received in the mail, which is different from the agreement Defendants submit in key respects. Notably, it contains different information under the headings "Membership Number," "[Car] Model," "Seller or Dealer Name," "Membership Effective Date," and "Membership Expiration Date" than Defendants' version of the agreement contains. (Compare D. Agreement with Dkt. 51-9 [Webb Decl. Ex. B, Mr. Webb's Agreement, hereinafter "W. Agreement"].) Plaintiffs therefore allege that Defendants populate the form agreement in their internal databases and then subsequently alter various fields within the document. (FAC ¶ 40.) [Dkt. 64, pp. 5-6.]

Here, it is clear that Plaintiffs were never presented with any arbitration provision during the telephone sales calls or through the links sent to them at the conclusion their telephone transactions. [Dkt. 51-3, pp. 2-7.] There simply is no evidence whatsoever of a "clickwrap" agreement in this case.

### D. Defendants' "Accept and Return" Theory Fails

Even if the Department had not already made the express finding that the contracts at issue here containing the subject "Arbitration Clauses" are "void *ab initio;*" the "Ultimate Smart Club Agreement" is invalid on its face and was never agreed to by Plaintiffs. Plaintiff Garcia never received anything in the mail, and the document that was mailed to Plaintiff Webb was different than what Defendants' alleged was the governing "Agreement." (Dkt. 51-4, p. 4:14-20; Dkt 51-9, Ex. B.).

Further, the Ultimate Smart Club Agreement specifically applies to "Membership" and not to an Extended Warranty or Vehicle Service Contract. [Dkt. 38-5, p. 2.] "Membership" not defined in the agreement, and no where during the sales transaction or through the links sent to Plaintiffs is there mention of a "membership." [Dkt. 51-3, pp. 2-7.]

Buried in section 13, "Club" is defined as "Auto Knight Motor Club" further confirming that the "Ultimate Smart Club Agreement" relates to the incidental club membership, not the Extended Warranty Policy (VSC) sold by Pelican a/k/a AAP during the telephone sales transaction. [Dkt. 38-5, p. 4.] "Participating Dealer" indicates a separate seller of another product who "also offers the "Dealer Loyalty Ultimate Motor Club Membership," which is inapplicable to Plaintiffs transactions. *Id.* "Member (You and Your)" is defined as an "[i]ndividual who pays full membership fees and is listed in the Club's files as an active member." *Id.*

Plaintiffs had not agreed to become "members" of anything and had not agreed to "pay full membership fees" during the initial telephone sales transaction or in any click through links relating to the sale of the Extended Warranty or VSC. Rather, Defendants collected illegal Vehicle Service Contract premium payments

from Plaintiffs.

### E. The Arbitration Clause Excludes Plaintiffs' Claims

The Arbitration Clause specifically excludes certain "Claims" such that it "does not include a statutory claim for public injunctive relief brought under any California statute enacted for a public reason, provided that You are a California resident or that You purchased Your Membership in California."

So, even if the court ignores (a) the declaration by the State of California that the VSC contracts are illegal, (b) or that no valid "clickwrap" arbitration agreement exists, (c) or the "Accept and Return" theory fails, (d) the court must still find that the arbitration agreement excludes Plaintiffs' claims.

This exclusion alone defeats Defendants efforts to compel arbitration, because the claims here fall outside the scope of the definition of "Claims." The Operative Class Action Complaint in this case does "include a statutory claim for public injunctive relief brought under any California statute enacted for a public reason." Specifically, Plaintiffs and the Class seek injunctive relief against Defendants pursuant to the California Consumer Legal Remedies Act (Cal. Civ. Code §1750, *et seq.*)

## VI. CONCLUSION

Based upon the argument and authority as set forth herein, Plaintiffs respectfully request that Defendants' Motion to Stay Pending Appeal be denied in its entirety.

DATED: November 2, 2023      STONEBARGER LAW, APC

BRADY & VINDING

By: /s/ Gene J. Stonebarger
STONEBARGER LAW, APC
Attorneys for Plaintiffs and the Class

STONEBARGER LAW
A Professional Corporation