# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| EDGAR GARCIA and DEAN WEBB, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS GROUP, LLC, d/b/a AAP and AUTO SERVICE DEPARTMENT, GUS RENNY, DEALER LOYALTY PROTECTION, INC., RICHARD BENEVENTO, AUTO KNIGHT MOTOR CLUB, INC., THE FORTEGRA GROUP, LLC, TIPTREE INC., SING FOR SERVICE, LLC d/b/a MEPCO, and DOES 1–50, inclusive,<br><br>Defendants. | Case No.: SACV 22-00699-CJC(ADSx)<br><br>**ORDER GRANTING AFTER REMAND DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION** |

## I. INTRODUCTION

In this putative class action, Plaintiffs Edgar Garcia and Dean Webb allege that Defendants Pelican Investment Holdings Group, LLC, doing business as AAP and Auto Service Department, Gus Renny, Dealer Loyalty Protection, Inc. ("DLP"), Richard Benevento, Auto Knight Motor Club, Inc. ("Auto Knight"), The Fortegra Group, LLC, Tiptree Inc., and Sing For Service, LLC doing business as Mepco violated the Telephone Consumer Protection Act and California's Consumer Legal Remedies Act by making "unsolicited and un-consented to automated prerecorded telephone calls" to Plaintiffs that turned out to be a scam to purchase vehicle service contracts disguised as extended car warranties or motor club memberships. (Dkt. 24 [First Amended Class Action Complaint, hereinafter "FAC"].) Before the Court, after remand from the Ninth Circuit, is Defendants' joint motion to stay the case pending arbitration. (*See* Dkt. 36 [Motion]; Dkts. 101–04 [Post-Remand Briefing].) For the following reasons, Defendants' motion is now **GRANTED**.[1]

## II. BACKGROUND

### A. Factual Background

Plaintiffs allege that Defendants run a scam in which their sales agents aggressively pressure consumers by phone to—without any written documentation whatsoever—make an initial payment for what they believe are extended car warranties, but are actually vehicle service contracts[2] that Defendants label in subsequent paperwork

---

[1] Having read and considered the papers the parties presented, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing scheduled for December 4, 2023, is hereby vacated and removed from the calendar. Plaintiff's request to continue the hearing (Dkt. 105) is **DENIED AS MOOT.**

[2] California law defines a "vehicle service contract" as "a contract or agreement for a separately stated consideration and for a specific duration to repair, replace, or maintain a motor vehicle or watercraft, or

and contracts as a "motor club membership." (*See* FAC ¶¶ 30, 41; Dkt. 51 at 8–9.) Plaintiffs allege that Defendants' calls "begin with a pre-recorded voice telling the consumer to 'Press 1' regarding extending his/her car's warranty." (FAC ¶ 31.) Once a person presses 1, they are transferred to someone at an international call center to confirm eligibility. (*Id.*) If eligible, they are then transferred to a "closer" at a domestic call center. (*Id.*) These closers use "aggressive sales tactics, insisting that the consumer must make a decision before they get off the phone call or they will lose the opportunity." (*Id.* ¶ 30.) They also "explain that the customer will receive the full policy within 14 days of purchase, that the customer should review the policy, and that if the customer does not approve of the terms, the customer has the right to cancel the agreement for a full refund within 30 days." (Dkt. 60-1 [Second Declaration of Vajira Samararatne, hereinafter "2d Samararatne Decl."] ¶ 2.) Mr. Garcia and Mr. Webb allege that they received these calls from Defendants and paid "down payments" of $155 and $295 during the calls. (FAC ¶¶ 5–6, 36–37; Dkt. 38-1 [Declaration of Vajira Samararatne, hereinafter "Samararatne Decl."] ¶¶ 2–3, Exs. B–C [Down Payment Receipts]; Dkt. 51-4 [Declaration of Edgar Garcia, hereinafter "Garcia Decl."] ¶¶ 7–13; Dkt. 51-7 [Declaration of Dean Webb, hereinafter "Webb Decl."] ¶¶ 6–11.)

After Defendants receive consumers' money, they send a link by text message and email for "Policy Info" and "confirmation" at "http://vsc-confirmation.com" (with "vsc" standing for "vehicle service contract"). (FAC ¶ 38; Samararatne Decl. ¶¶ 4–5; 2d Samararatne Decl. ¶ 3; Garcia Decl. ¶ 14, Exs. A–B; Webb Decl. ¶ 13, Ex. A.) Clicking the link produces a welcome letter with a link to an "Ultimate Smart Club Agreement," which customers can download and electronically confirm the terms and conditions. Defendants submit evidence that both Mr. Webb and Mr. Garcia (with Mr. Garcia using

---

to indemnify for the repair, replacement, or maintenance of a motor vehicle or watercraft, necessitated by an operational or structural failure due to a defect in materials or workmanship, or due to normal wear and tear." Cal. Ins. Code § 12800(c)(1).

the name Gregory Meyer) downloaded and consented to the agreement using the provided links by clicking a box next to "I agree to Terms & Conditions." (Samararatne Decl. ¶ 4, Exs. C, E; Dkts. 38-4, 38-6; *see* Dkt. 51-6; 3d Samararatne Decl. ¶ 3.) Mr. Webb and Mr. Garcia deny that they downloaded or electronically accepted the agreement. (Webb Decl. ¶¶ 12–13; Garcia Decl. ¶ 14.)

Within fourteen days, Defendants also send the Ultimate Smart Club Agreement by mail. (FAC ¶ 39; Webb Decl. ¶ 14; 2d Samararatne Decl. ¶ 4, Ex. A [Mail Delivery Reports].) Though there is a section titled "Acceptance of Terms, Conditions and Coverage" and preprinted spaces for "Member Signature" and "Dealer Representative Signature," neither Defendants nor the consumer signs these documents. (FAC ¶ 39; Dkt. 101-1 [Third Declaration of Vajira Samararatne, hereinafter "3d Samararatne Decl."], Exs. A–B [Agreements Mailed to Plaintiffs, hereinafter "Agreement"].)

The cover page of the agreement states, "**You** acknowledge **Your** understanding of and agree to the **Dispute Resolution/Arbitration Agreement and Class Action Waiver** section in this **Membership**. Refer to the Dispute Resolution/ Arbitration Agreement and Class Action Waiver section for opt-out instructions." (Agreement at 1; Webb Decl., Ex. B.) On pages five through eight, the Agreement contains a "**DISPUTE RESOLUTION/ARBITRATION AGREEMENT AND CLASS ACTION WAIVER,**" which states that the parties "are agreeing to submit any and all Claims to binding arbitration on an individual basis for resolution." (Agreement at 5.) This includes "any and all claims, disputes and controversies related in any way to this **Membership**, including but not limited to claims related to the underlying transaction giving rise to this **Membership**, or claims related to the sale, financing or fulfillment of this **Membership**. (*Id.* at 6.) The agreement provides that the term "claims" "shall be given the broadest meaning possible and includes, without limitation, Claims arising under contract, tort, [or] statute . . . and Claims against any of [Auto Knight's] owners,

shareholders, members, affiliates, subsidiaries, divisions, directors, officers, employees, representatives, agents, successors, or assigns." (*Id.*)  The agreement also states that "the arbitrator shall have exclusive authority to decide all issues related to the enforcement, applicability, scope, validity, and interpretation of this Arbitration Agreement, including but not limited to any unconscionability challenge or any other challenge that the Arbitration Agreement is void, voidable or otherwise invalid." (*Id.*)  The "**CLASS ACTION WAIVER**" states that **"[a]ll Claims must be brought solely in an individual capacity, and not as a plaintiff or class member in any purported class action."**  (*Id.*)

Finally, in a paragraph titled "**OPT-OUT PROVISION**," the agreement provides, "**YOU SHALL HAVE THE RIGHT TO OPT OUT OF THIS ARBITRATION AGREEMENT AND CLASS ACTION WAIVER BY PROVIDING WRITTEN NOTICE OF YOUR INTENTION TO DO SO TO US WITHIN THIRTY (30) DAYS OF THE PURCHASE OF THIS MEMBERSHIP (THE DATE OF PURCHASE BEING INDICATED ON YOUR MEMBERSHIP)**." (*Id.* at 8.)

The agreement additionally provides that the consumer "may request a cancellation of this **Membership** at any time by emailing cancellations@ dealerloyaltyprotection.com or visiting www.dealerloyaltyprotection.comand selecting **REQUEST CANCELLATION** then completing the required fields.  A full refund will be issued if within thirty (30) days from the **Membership** Effective Date, less any claims paid." (Agreement at 5.)

Neither Mr. Webb nor Mr. Garcia opted out of the arbitration agreement or class action waiver, or requested cancellation of their membership. (Samararatne Decl. ¶¶ 6, 12.)  Defendants continue to collect monthly payments of $146.67 from Mr. Garcia, and $226.22 from Mr. Webb.  (FAC ¶¶ 44–45; Garcia Decl. ¶ 15; Webb Decl. ¶ 16.)

### B. Procedural Background

With their original motion to stay this case pending arbitration, which the Court denied, Defendants "inadvertently attached an internal copy [of the agreement] with a different cover page." (Dkt. 101 at 7 n.2.) That internal copy contained different information under the headings "Membership Number," "[Car] Model," "Seller or Dealer Name," "Membership Effective Date," and "Membership Expiration Date" than the copy of the agreement that Mr. Webb submitted. (Dkt. 64 at 6.) Given the differences in the agreements submitted, giving Plaintiffs the benefit of all reasonable doubts and inferences, and recognizing Plaintiffs' allegation that Defendants populate the form agreement in their internal databases and then subsequently alter various fields within the document, the Court concluded that Defendants had not proven by a preponderance of the evidence that the parties mutually consented to form an agreement to arbitrate. (Dkt. 64.)

The Ninth Circuit disagreed that the differences between the parties' two versions of the agreement were material, reasoning that they "boil down to variations in the cover pages rather than in their material terms." (Dkt. 95 at 6.) It remanded for the Court to, "as the finder of fact, resolve the parties' competing factual positions on whether a valid 'clickwrap' agreement exists and . . . evaluate the legal and factual viability of Defendants' 'accept or return' theory." (*Id.* at 7.) On remand, Defendants submit "the Agreement each Plaintiff actually received," which match the agreement Mr. Webb submitted with the original briefing. (Dkt. 101 at 7 [citing 3d Samararatne Decl. ¶¶ 2-3, Exs. A–B].)

### III. LEGAL STANDARD

Written arbitration agreements are "enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court

has explained that "this provision [of the Federal Arbitration Act] requires federal courts to place arbitration agreements upon the same footing as other contracts." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020) (cleaned up). Accordingly, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that there was an agreement to arbitrate. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). The party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

## IV.   DISCUSSION

Defendants argue that the Court should enforce the Ultimate Smart Club Membership Agreement's arbitration provision and stay this case pending arbitration. The Court agrees. First, the mailed agreement is a valid accept-or-return agreement. An "accept-or-return" contract "relies on the proposition that a contract is formed not at the time of purchase or earlier but rather when the purchaser either rejects by seeking a refund or assents by not doing so within a specified time, providing the purchaser with an opportunity to review the proposed terms." *See Higgs v. Auto. Warranty Corp. of Am.*, 134 F. App'x 828, 831 (6th Cir. 2005) (quoting *Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 431 n. 43 (2d Cir. 2004)). Courts across the country, including in the Ninth Circuit, have enforced this mechanism of contract formation "in contexts involving the sale of products and services by mail and telephone, software licensing and sales, mobile telephone service agreements, satellite television agreements, credit card agreements, and bank account agreements." *Id.* (collecting cases); *see, e.g.*, *Murphy v. DIRECTV, Inc.*, 2011 WL 3319574, at *2 (C.D. Cal. Aug. 2, 2011), *aff'd*, 724 F.3d 1218 (9th Cir. 2013).

This conclusion recognizes that "[p]ractical business realities make it unrealistic to expect [companies] to negotiate all of the terms of their customer contracts, including arbitration provisions, with each customer before initiating service." *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1105 (C.D. Cal. 2002).

Defendants have submitted evidence that they mailed Plaintiffs the Ultimate Smart Club Agreement, which stated that they had the right to opt out of the arbitration agreement and class action waiver or to request a cancellation of the membership altogether. (Agreement at 5, 8.) Plaintiffs did not do so. (FAC ¶¶ 44–45; Samararatne Decl. ¶¶ 6, 12; Garcia Decl. ¶ 15; Webb Decl. ¶ 16.) Accordingly, an accept-or-return agreement was created. *See Higgs*, 134 F. App'x at 831; *Murphy*, 2011 WL 3319574, at *2; *Bischoff*, 180 F. Supp. 2d at 1105.

Second, the texted and emailed agreement is also a valid clickwrap agreement. A "'clickwrap' (or 'click-through') agreement[]" requires "website users . . . to click on an 'I agree' box after being presented with a list of terms and conditions of use," expressly manifesting assent to those terms and conditions. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). Courts routinely uphold such agreements. *See, e.g., Moule v. United States Parcel Serv. Co.*, 201 WL 3648961, at *4 (E.D. Cal. July 7, 2016) (quoting *United States v. Drew*, 259 F.R.D. 449, 462 n.22 (C.D. Cal. 2009)); *Berge v. Masanto*, 2020 WL 12948070, at *4 (S.D. Cal. Sept. 22, 2020) (enforcing arbitration clause in clickwrap agreement). Defendants provide evidence that Plaintiffs downloaded the agreement, clicked through the terms and conditions, including the arbitration provision and class action waiver, and agreed to them. (Samararatne Decl. ¶ 4, Exs. C, E; Dkts. 38-4, 38-6.) This created a valid clickwrap agreement. *See Nguyen*, 763 F.3d at 1175–76.

Plaintiffs argue that the agreements are void *ab initio*. (Dkt. 102 at 5, 7.) They present evidence that the California Department of Insurance recently brought formal actions against Auto Knight, DLP, and Benevento alleging that the contracts are unapproved motor club contracts and therefore void. (Dkt. 102-2 [Orders to Show Cause re Cease and Desist, Orders to Show Cause re Industry Ban, and Notice of Intent to Revoke or Suspend Certificate of Authority before the California Insurance Commissioner].) But "challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("[T]he issue of the contract's validity is considered by the arbitrator in the first instance."); *Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 703 (9th Cir. 2022) ("A defense that a law invalidates a contract with an arbitration provision is an issue for the arbitrator to decide.").

Plaintiffs also argue that the arbitration clause does not cover their claim for public injunctive relief. But "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as . . . whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)). The arbitration clause here gives the arbitrator "exclusive authority to decide all issues related to the enforcement, applicability, scope, validity, and interpretation of this Arbitration Agreement." (Agreement at 6.) "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contact." *Henry Schein*, 139 S. Ct. at 528; *see, e.g.*, *Revitch v. Uber Techs., Inc.*, 2018 WL 6340755, at *5 (C.D. Cal. Sept. 5, 2018) ("[W]here there is a delegation provision, as there is here, the public injunctive relief question is reserved to the arbitrator.").

## V. CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED**. This case is **STAYED** pending resolution of arbitration.

DATED: November 29, 2023

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE